USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/25/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TRUSTEES OF THE NEW YORK CITY  :
DISTRICT COUNCIL OF CARPENTERS  :
PENSION FUND, WELFARE FUND, ANNUITY :
FUND, AND APPRENTICESHIP,  :
JOURNEYMAN RETRAINING, EDUCATIONAL :
AND INDUSTRY FUND, *et al.*,  :
                                          Petitioners,  :
                                -against-  :
FORMULA 1 BUILDERS, LLC,  :
                                        Respondent.  :
-------------------------------------------------------------------X

1:17-cv-1234-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

    The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; the Trustees of the New York City Carpenters Relief and Charity Fund; the New York City and Vicinity Carpenters Labor Management Corporation (together, the "Funds"); and the New York City District Council of Carpenters (the "Union," and collectively with the Funds, the "Petitioners") seek to confirm an arbitration award obtained against Formula 1 Builders, LLC ("Formula 1" or "Respondent") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1]  For the following reasons, the award is confirmed.

---

[1] Petitioners styled their petition as one brought "under Section 502(a)(3) of the Employee Retirement Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185; and/or section 9 of the Federal Arbitration Act, 9 U.S.C. § 9." ECF No. 1, Pet. to Confirm Arbitration Award, ¶ 1.  The Court treats the petition as one brought under Section 301 of the LMRA. The Court will not consider the petition under ERISA because "an action to confirm an arbitration award is not an appropriate vehicle for adjudication of ERISA claims for damages." *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987); *see also New York City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03-cv-5122 (DAB), 2003 WL 22773355, at *1 n.1 (S.D.N.Y. Nov. 21, 2003) (declining to consider the plaintiff's ERISA claims for the same reason).  Nor will the Court consider the petition under the FAA, since the FAA does not apply to actions within the scope of Section 301 of the LMRA.  *Santos v. Gen. Elec. Co.*, No. 10-cv-6948 (JSR), 2011 WL 5563544, at *8 & n.13 (S.D.N.Y. Sept. 29, 2011); *accord Westerbeke v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 222 (2d Cir. 2002) ("[T]he FAA is no longer applicable to actions to enforce arbitration awards brought pursuant to § 301 of the LMRA."); *see also id.* at 221-22

# I. BACKGROUND

Pursuant to a collective bargaining agreement entitled Independent Building Construction Agreement (the "CBA") entered into between Formula 1 and the Union, Formula 1 was required to pay hourly benefit contributions to the Funds at certain specified rates for all employees covered by the CBA. ECF No. 12, Decl. of Brian Spencer ("Spencer Decl."), ¶¶ 3-4, 9 & Ex. C, Independent Building Construction Agreement ("CBA") at 35-40 (art. XV).[2] The CBA also required Formula 1 to furnish its books and payroll records when requested by the Funds for the purpose of completing an audit to ensure that Formula 1 had complied with its benefit contribution obligations. *Id.* art. XV § 1; *see also* Ozard Decl., Ex. D (Revised Statement of Policy for Collection of Employer Contributions) § IV, ¶ 1.

With respect to dispute resolution, the CBA provided that "[s]hould any dispute or disagreement arise between the parties hereto, or between the Union and any employer-member signatory hereto, concerning any claim arising from payments to the Fund[s] of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder." CBA, art. XV, § 7. The CBA also provided that "[t]he arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy including, but not limited to, monetary damages" and that "[t]he arbitrator's award . . . shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction." *Id.* It also provided that "[t]he cost of the arbitration, including the fees to be paid to the arbitrator, shall be included in the award and shall be borne by the losing party." *Id.*

---

(lamenting the "unfortunate tendency of courts in this Circuit to conflate review of awards under the FAA and under § 301 [of the LMRA]" and noting that "it would be error to collapse the analysis under the two statutes").

[2] The CBA between Formula 1 and the Union was executed on or around October 30, 2013. Spencer Decl. ¶ 3. The CBA expressly provides that it "shall be renewed automatically for one year intervals" unless one of the parties provides notice that "such party seeks to negotiate a new contract or modify or amend this Agreement through negotiations." CBA, art. XIX. There is no evidence that Formula 1 has ever filed any such notice. ECF No. 13, Decl. of Chris Ozard ("Ozard Decl."), ¶ 9.

As was their right under the CBA, the Funds attempted to conduct an audit of Formula 1's books and payroll records covering the period of October 30, 2013 through February 3, 2016 to determine whether Formula 1 had complied with its contribution requirements. Ozard Decl. ¶ 11. However, a dispute arose when Formula 1 refused to submit to the audit. *Id.* As a result, the Funds conducted an estimated audit pursuant to the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"),[3] which provides:

> In the event that an employer refuses to permit a payroll review and/or audit upon request by the Fund Office or the Outside Accounting Firms, or if the employer refuses the Outside Accounting Firms access to pertinent records, . . . the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period.

Ozard Decl., Ex. D, § IV ¶ 12. In accordance with the Collection Policy, when Formula 1 refused to submit to the requested audit, the Funds determined that the highest average hours reported by Formula 1 in a consecutive four-week period during the requested audit period had occurred during the weeks ending March 26, 2014 through April 16, 2014 (the "Estimated Audit Period"). Ozard Decl. ¶ 14. The Funds calculated the average of the weekly contributions owed during that four-week period as $24,812.14. *See* Ozard Decl., Ex. E (Formula 1 Builders Estimated Audit (Oct. 30, 2016-Feb. 3, 2016)), columns A-D. The Funds applied that estimated weekly contribution to the number of weeks in the Estimated Audit Period and subtracted all contributions actually paid by Formula 1 during that period, arriving at a total delinquency of $2,562,364.56. *Id.* Ex. E, column E.

The Collection Policy also provided that "[i]nterest owed by a delinquent employer shall be calculated at the prime lending rate of Citibank plus 200 basis points, compounded daily, on a declining principal basis. Interest shall accrue from the date the contributions were due to the date when payment of the contributions is received." Ozard Decl. ¶ 15; Collection Policy, § V, ¶ 1

---

[3] Pursuant to the CBA, Formula 1 is bound by the Collection Policy. *See* Ozard Decl. ¶ 10; CBA, Art. XV § 3.

(emphasis omitted). The Collection Policy explicitly stated that an estimated audit determination "shall constitute presumptive evidence of delinquency." Collection Policy, § IV, ¶ 12.

Pursuant to the CBA, the Funds initiated arbitration. After providing notice to both parties, the arbitrator held a hearing on June 2, 2016. Ozard Decl., Ex. F. At the hearing, Petitioners appeared through counsel and submitted testimony and other evidence in support of their claims. Ozard Decl., Ex. G (Award) at 2. No representative appeared at hearing on behalf of Formula 1; because Petitioners had provided proof that Formula 1 had legally sufficient notice of the hearing and the claims against it, the arbitrator held Formula 1 in default and proceeded in its absence. *Id.* On June 6, 2016, the arbitrator issued his award, finding that the "uncontroverted testimony and evidence" established that Formula 1 was bound to the CBA and was thus required to comply with the Funds' requested audits. *Id.* The arbitrator determined that, based on the "substantial and credible evidence of the case as a whole," Formula 1 had violated the CBA and owed the Funds $2,562,364.56 in estimated principal benefit contributions; $180,317.37 in interest; $512,472.91 in liquidated damages; $400.00 in "court costs;" $1,500 in attorneys' fees; and $500 for the arbitrator's fee, for a total award of $3,257,554.84. *Id.* at 2-3. The arbitrator also awarded interest, to accrue at the rate of 5.5% from the date of issuance of the award. *Id.* at 3.

On February 17, 2017, Petitioners commenced the instant confirmation action, asserting that Formula 1 had not satisfied any portion of the arbitral award. *See* ECF No. 1. The Court directed Petitioners to file any declarations and affidavits with which it intended to support its petition by March 17, 2017 and directed Formula 1 to file any opposition by March 31, 2017. ECF No. 8. Petitioners filed their motion for summary judgment and supporting documents on March 17, 2017. ECF Nos. 11-16.

Petitioners served their petition and summons on Formula 1 on February 23, 2017. ECF No. 10. They also served the Court's scheduling order on February 23, 2017, ECF No. 9, and they served their motion for summary judgment on March 17, 2017. ECF. No. 17. Despite being

4

properly served with the petition and summons, Petitioners' motion for summary judgment, and the Court's order establishing deadlines for opposing that motion, Formula 1 has not appeared in this action.

## II. DISCUSSION

### A. The Arbitration Award

"Section 301 of the [LMRA], 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-04421 (ENV)(RLM), 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

A court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) ("Because [t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of [arbitration] awards, an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it

5

draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." (citation and internal quotation marks omitted)); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

Here, there is no indication that the arbitrator's award was procured through fraud or dishonesty or that the arbitrator was acting in disregard of the CBA or outside the scope of his broad authority to resolve any dispute between the parties regarding contributions. Rather, the record indicates that the arbitrator based his award on undisputed evidence that Formula 1 failed to permit the Funds to examine its books and records as required by the CBA and that the Funds conducted an estimated audit in accordance with the terms of the Collection Policy. The record further indicates that the arbitrator based his principal award and his award of interest, liquidated damages, and various costs on the provisions of the CBA and the Collection Policy, as well as undisputed testimony. Accordingly, Petitioners' motion is granted and the award is confirmed.

**B. Post-award Prejudgment Interest**

Petitioners have also requested that the Court award prejudgment interest at the rate of

5.5%—the post-award rate prescribed by the arbitrator—for the period between the date of the award and the date of judgment in this action. ECF No. 1, at 7; ECF No. 15, at 7. The Second Circuit has noted that in the context of actions to confirm arbitral awards there is "a presumption in favor of prejudgment interest." *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984). Accordingly, district courts in this Circuit "have exercised their discretion to award prejudgment interest when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was 'final and binding.'" *Serv. Employees Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs.*, LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004) (collecting cases). Moreover, the arbitrator has already awarded this interest. Ozard Decl., Ex. G (Award) at 3. Accordingly, this interest rate will be encompassed within the Court's confirmation of the arbitrator's award.

### C. Attorneys' Fees and Costs

Petitioners also request $4,060.00 in attorneys' fees and $480.46 in costs arising from this confirmation action. *See* ECF No. 14, Decl. of Todd Dickerson ("Dickerson Decl."), ¶¶ 9, 10 & Ex. H. Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for the recovery of attorneys' fees. *Id.* However, "[p]ursuant to its inherent equitable powers . . . a court may award attorney's fees when the opposing counsel acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). In the context of confirmation proceedings, "the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Id.* (quoting *Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron, Div. of Textron, Inc.*, 688 F.2d 997, 999 (2d Cir. 1982)).

Here, an award of fees and costs is justified. By entering into the CBA, Formula 1 agreed to

7

submit to arbitration of disputes at the option of either party to the agreement. Formula 1 failed to participate in the arbitration proceeding, despite having been duly notified of the hearing. Following the arbitrator's decision that Formula 1 violated its obligations under the CBA, Formula 1 failed to satisfy any portion of the award and has subsequently failed to oppose the instant petition to confirm the award. In so doing, Formula 1 has failed to offer any justification for its refusal to abide by the decision of the arbitrator. *See, e.g.*, *E. Millenium Constr.*, 2003 WL 22773355, at \*3 (awarding fees and costs where defendant "chose not to participate in the arbitration proceedings or even to oppose Plaintiffs' application for confirmation of the arbitration award"); *New York City Dist. Council of Carpenters v. Metro Furniture Servs. LLC*, No. 11-cv-7074 (HB), 2012 WL 4492384, at \*4 (S.D.N.Y. Sept. 28, 2012) (awarding attorneys' fees and finding that respondent's "inaction in the arbitration hearings and in the present action . . . constitutes bad faith"). Moreover, the CBA includes a provision that allows the Funds to recover reasonable attorneys' fees and court costs upon prevailing in a confirmation action. CBA, art. XV, § 6(a). The Funds' Collection Policy further states that "[a]ttorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts" and that "[a]ll recoverable costs actually incurred in court or other legal actions or the collection of delinquent contributions . . . shall be assessed against the delinquent employer." Collection Policy, at 8-9. Therefore, allowing the Funds to recover reasonable attorneys' fees and costs in the current action aligns with the parties' contractual expectations. Finally, an award of attorneys' fees will further the federal policy in favor of settling labor disputes by arbitration. *See Niagara Mohawk Power Corp.*, 196 F.3d at 124.

In support of their request for fees and costs, Petitioners submitted an invoice listing the completed tasks, attorneys' hourly rates, and billed hours, as well as their costs. Dickerson Decl., Ex. H. In total, Petitioners incurred 18.30 hours of legal work at the rates of $300/hour for "of counsel" attorneys, $225/hour for associate attorneys, and $100/hour for legal assistants. *Id.* ¶¶ 4-7

8

& Ex. H. Petitioners' costs consist primarily of the court filing and process server fees. *Id.* Ex. H.

The Court has reviewed these contemporaneous records and has determined that the amounts requested are reasonable. *See* Dickerson Decl., Ex. H. Accordingly, Petitioners' request for attorneys' fees and costs is granted.

## III. CONCLUSION

For the foregoing reasons, the Clerk of Court is directed to enter judgment in favor of Petitioners and against Formula 1 in the amount of $3,262,095.30—which consists of the arbitration award of $3,257,554.84 plus $4,540.46 in attorneys' fees and costs incurred in the instant action—plus prejudgment interest on the arbitration award at the rate of 5.5% per annum from the date of the award (June 6, 2016) to the date of judgment. Post-judgment interest will accrue pursuant to 28 U.S.C. § 1961.

The Clerk of Court is further directed to close this case.


SO ORDERED.

Dated: April 24, 2017
New York, New York

GREGORY H. WOODS
United States District Judge